# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0752-16T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

N.L. n/k/a N.B., N.D.-F. and
K.C.,

    Defendants,

and

R.F., II,

    Defendant-Appellant.

_____

IN THE MATTER OF B.F. and
R.F., III, Minors.

_____

        Submitted October 2, 2017 — Decided November 21, 2017

        Before Judges Whipple and Rose.

        On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FN-08-0040-16.

        Joseph E. Krakora, Public Defender, attorney for appellant (Thomas G. Hand, Designated Counsel, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jaime Millard-Tindall, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor B.F. (Todd Wilson, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor R.F. III (Rachel E. Seidman, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant R.F., II,[1] appeals from a January 19, 2016 Family Part order[2] determining he sexually abused his five-year-old son, B.F. We affirm.

## I.

We derive the following facts from the record developed at the January 14, 2016 fact-finding hearing. On July 20, 2015, the Division of Child Protection and Permanency ("Division") received a referral stating B.F. disclosed to his stepsister, S.D, that defendant had twice anally penetrated him. Division intake supervisor Lynette Ficcaglia testified at the hearing that Division workers met with B.F., his stepmother N.D.F., S.D., and

_____

[1] We use initials to protect the privacy of the parties. See R. 1:38-12(d)(12).

[2] This order became appealable as of right after the trial court entered a final order terminating litigation on September 6, 2016.

A-0752-16T2

B.F.'s other siblings at their home to investigate the allegations. Ficcaglia did not personally investigate B.F.'s claims, but approved the investigation and "dealt with the investigator step by step throughout the night."

Ficcaglia testified that, although B.F. confirmed he had told S.D. "something that was the truth," he did not disclose the sexual abuse to the Division workers. During her interview, S.D. confirmed B.F.'s disclosures to her. Ficcaglia testified further that Division workers "spoke with the half-brother that was in the house, too, who confirmed, also."[3]

As a result of B.F.'s disclosures, the Gloucester County Prosecutor's Office was contacted, and B.F. was interviewed by the on-call detective. Division workers observed the interview via closed-circuit television, and Ficcaglia summarized the interview at trial. B.F. told the detective that after showering together, his father laid B.F. on his stomach, laid on top of B.F., and put his penis in B.F.'s buttocks. B.F. stated defendant used a lubricant from a bottle with a pink cap, and the abuse occurred

_____

[3] It is unclear whether Ficcaglia referenced B.F.'s stepbrother or half-brother: according to the Division's investigative summary, B.F.'s nineteen-year-old stepbrother, D.D., told the intake worker B.F. confirmed that "'dad put his penis in my butt,'" but B.F.'s six-year-old half-brother, R.F., III, did not disclose to the intake worker that he or B.F. was sexually assaulted. R.F., III was named in the instant matter, and was represented at the hearing and on appeal by a separate law guardian.

on more than one occasion.  The intake worker summarized the interview in her investigative summary.

To corroborate B.F.'s allegations of abuse, the Division relied on the expert testimony of Dr. Stephanie Lanese, a pediatrician employed by the CARES Institute, a regional child abuse facility at Rowan University.  Defense counsel stipulated to Dr. Lanese's expertise in general and child abuse pediatrics.

On July 22, 2015, Dr. Lanese conducted an evaluation of B.F. at the CARES Institute.  Dr. Lanese opined B.F. had been sexually abused.  She based her conclusion on a number of factors, including:  B.F.'s idiosyncratic details of the sexual abuse, such as describing the "pink-topped tube," and removal of his clothing prior to the act; B.F.'s explicit sexual knowledge for a child of his age; and that B.F. had never seen pictures of naked people.

Dr. Lanese noted her physical examination of B.F. did not reveal any medical evidence of abuse.  Dr. Lanese explained, however, "[i]t is uncommon to see physical injury for sexual abuse."  Specifically, injury might occur in five to ten percent of examinations performed within "[twenty-four] to [seventy-two] hours" of the occurrence.

In addition to the testimony of Dr. Lanese and Ficcaglia, the Division moved into evidence:   the Division's investigation summary (P1); Dr. Lanese's evaluation of B.F.; (P2); Dr. Lanese's

evaluation of R.F., III (P3); and Dr. Lanese's curriculum vitae (P4). Neither B.F. nor defendant testified at the hearing, and defendant presented no witnesses or evidence. Nor did the law guardians present any witnesses or evidence.[4]

On January 19, 2016, in an oral decision, the court found the Division met its burden of establishing by a preponderance of the evidence that defendant committed acts of sexual abuse against B.F. The court recounted the testimony of Dr. Lanese and Ficcaglia, finding both witnesses credible. The court observed that B.F. had made several admissions to his siblings, mother, and detective, as witnessed by the Division workers. Although the judge also relied on the documentary evidence in his decision, he noted he did not consider any embedded hearsay in finding the sexual abuse was established.

Defendant appeals the trial court's order. Defendant raises the following overlapping arguments for our review: the court failed to make adequate findings and conclusions of law; the court relied on inadmissible hearsay to corroborate B.F.'s allegations; Dr. Lanese's ultimate conclusion was outside her expertise; and the court did not properly consider B.F.'s recantation. The

---

[4] Subsequent to the fact-finding hearing, and prior to the court's decision, B.F.'s law guardian filed a motion for emergent relief to continue the hearing to present the testimony of B.F.'s two therapists. Defendant opposed the motion, which the court denied.

Division and law guardians urge us to affirm the court's order. After reviewing the record in light of the contentions advanced on appeal, we affirm.

II.

Our Supreme Court has set forth the standards that govern our review of abuse or neglect matters as follows:

> [A]ppellate courts defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a feel of the case that can never be realized by a review of the cold record. Indeed, we recognize that [b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding.
>
> [N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-43 (2010) (second alteration in the original) (citations and internal quotation marks omitted).]

"[I]f there is substantial credible evidence in the record to support the trial court's findings, we will not disturb those findings." N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010). However, "if the trial court's conclusions are 'clearly mistaken or wide of the mark[,]' an appellate court must intervene to ensure the fairness of the proceeding." Id. at 227 (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). We also owe no deference

to the trial court's legal conclusions, which we review de novo. State v. Smith, 212 N.J. 365, 387 (2012) (citations omitted), cert. denied, 568 U.S. 1217, 133 S. Ct. 1504, 185 L. Ed. 2d 558 (2013).

An "abused or neglected child" under Title 9 means, in pertinent part, a child under the age of eighteen whose parent or guardian "commits or allows to be committed an act of sexual abuse against the child." N.J.S.A. 9:6-8.21(c)(3). The trial judge has a duty to conduct a fact-finding hearing to determine whether the Division has proved such abuse or neglect "by a preponderance of the competent, material and relevant evidence." N.J. Div. of Youth & Family Servs. v. C.H., 428 N.J. Super. 40, 62 (App. Div. 2012). "Under the preponderance standard, a litigant must establish that a desired inference is more probable than not. If the evidence is in equipoise, the burden has not been met." Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006) (citations and internal quotation marks omitted).

Before applying these principles to the record evidence, however, we address defendant's argument that the court erred in relying on embedded hearsay statements contained in the investigation summary of the Division intake worker who did not testify. Specifically, defendant challenges the court's admission of the intake worker's observations of the detective's interview

of B.F, and B.F.'s statements to his stepsister, S.D, and stepbrother, D.D. Defendant's claims lack merit.

"We grant substantial deference to the trial judge's discretion on evidentiary rulings." N.J. Div. of Youth & Family Servs. v. M.G., 427 N.J. Super. 154, 172 (App. Div. 2012) (citations omitted). Of course, that discretion must conform to applicable legal standards. See, e.g., Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008).

Pursuant to N.J.S.A. 9:6-8.46(b), evidence adduced in an abuse or neglect hearing must be "competent, material and relevant." See N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 398, (2009). That requirement is consistent with the principle that Title 9 fact-finding hearings must be conducted with sufficient formality and general adherence to fundamental evidentiary rules. See, e.g., N.J. Div. of Youth & Family Servs. v. I.Y.A., 400 N.J. Super. 77, 90-91 (App. Div. 2008).

Furthermore, it is well-settled that, in matters involving the alleged abuse of children, our rules of evidence are "supplemented by statute and court rule[s]." N.J. Div. of Youth & Family Servs. v. L.A., 357 N.J. Super. 155, 166 (App. Div. 2003). Rule 5:12-4(d) specifically permits the Division to submit in evidence "reports by staff personnel," but it must do so "pursuant

to N.J.R.E. 803(c)(6) and 801(d)," which refer to the business record exception to the hearsay rule.

Moreover, reports admitted pursuant to Rule 5:12-4(d) are subject to other hearsay limitations, including those imposed by N.J.R.E. 805 concerning embedded hearsay statements.[5] See, e.g., N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 496 (App. Div. 2016) (quoting In re Guardianship of Cope, 106 N.J. Super. 336, 343 (App. Div. 1969)). In Cope, we held, "the [Division] should be permitted to submit into evidence, pursuant to [former] Evidence Rules 63(13) and 62(5), reports by [Division] staff personnel . . . prepared from their own firsthand knowledge of the case." Cope, supra, 106 N.J. Super. at 343; See also, N.J. Div. of Child Prot. & Permanency v. B.O., 438 N.J. Super. 373, 385 (App. Div. 2014).

Here, defendant concedes the Division's investigative summary was properly admitted in evidence pursuant to Rule 5:12-4. He claims, however, because the Division worker who prepared the

---

[5] N.J.R.E. 805 states:

> A statement within the scope of an exception to Rule 802 shall not be inadmissible on the ground that it includes a statement made by another declarant which is offered to prove the truth of its contents if the included statement itself meets the requirements of an exception to Rule 802.

A-0752-16T2

report did not testify at trial, her memorialized observations of B.F.'s statements to the detective constitute inadmissible hearsay. Among other things, defendant argues the caseworker had turned the case over to the prosecutor's office and, as such, her observations do not fall within the business records exception pursuant to N.J.R.E. 803(c)(6).

We are unpersuaded by defendant's arguments. Although the caseworker did not participate in the interview, she witnessed it in real time and summarized B.F.'s statements in her investigative summary. Although the intake worker did not testify at trial, Ficcaglia's undisputed testimony confirmed the summary was prepared in the regular course of the intake worker's business.

Moreover, defendant did not object at trial specifically to Ficcaglia's testimony summarizing the interview. Rather, defense counsel objected generally to any statements "attributed to [his] client" and any statement that does not have "an independent exception to the hearsay rule." Defense counsel emphasized "the most objectionable [e]mbedded hearsay is contained on Page 7" of the investigative summary, all of which pertain to defendant's admission to the detective that he penetrated B.F., the charges against defendant, and the outcome of B.F.'s examination with Dr. Lanese. The court invited the parties to submit in evidence a redacted version of the investigative summary, but defense counsel

responded, "I don't object to the [c]ourt reviewing the document." Thus, it is unclear whether defendant objected specifically to the statements made by B.F. to the detective. It is likewise unclear whether defendant objected to B.F.'s statements to his step-siblings, S.D., and D.D., contained in the investigative summary.

In any event, we conclude the trial court properly admitted B.F.'s statements to the detective through Ficcaglia, and as contained in the investigative summary, and B.F.'s statements to his step-siblings, pursuant to N.J.S.A. 9:6-8.46(a)(4). That subsection states, "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." See N.T., supra, 445 N.J. Super. at 497. "Thus, a child's hearsay statement may be admitted into evidence, but may not be the sole basis for a finding of abuse or neglect." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011).

We are satisfied B.F.'s statements to the detective were sufficiently corroborated. We have recognized that corroboration may include "eyewitness testimony, a confession, an admission or medical or scientific evidence." N.J. Div. of Youth & Family Servs. v. L.A., 357 N.J. Super. 155, 166 (App. Div. 2003). However,

corroborative evidence may also be circumstantial because often there is no direct physical or testimonial evidence to support a child's statements. N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 436 (App. Div. 2002) (recognizing corroboration may include, "'a child victim's precocious knowledge of sexual activity[.]'").

While much of the Division's evidence derives from B.F.'s statements detailing defendant's sexual assaults, there is sufficient corroboration in the record to support those statements based upon Dr. Lanese's unrefuted expert testimony. Specifically, Dr. Lanese is a medical doctor, specializing in pediatric child abuse. On cross-examination of her credentials, she acknowledged she is not a psychologist, but has greater expertise in psychology "than the average person; because of [her] experience in the child abuse field, and the reasons [they] actually provide treatment, and ask for these children to go to treatment." Although Dr. Lanese would not make a psychological diagnosis as part of her examination, she explained "it's very difficult to separate your psychological and your physiologic. Things that happen emotionally to you can also affect you physically. So, I understand the psychological component enough, of how it may affect the body itself."

A-0752-16T2

We are satisfied Dr. Lanese's expertise in child abuse pediatrics dispels defendant's claims that her findings went beyond pediatrics. Thus, contrary to defendant's contention, B.F.'s statements detailing two accounts of sexual penetration by defendant were corroborated by Dr. Lanese's expert testimony and evaluation of the child. Z.P.R., supra, 351 N.J. Super. at 436.

Additionally, for the first time on appeal, defendant argues Dr. Lanese's corroboration of the sexual assault was an impermissible net opinion. This argument also lacks merit.

Defendant did not challenge Dr. Lanese's qualifications as a child abuse expert at trial. During cross-examination of her credentials, defense counsel elicited that Dr. Lanese was not an expert in psychology, but he did he not object to any portion of her testimony, nor seek to have it stricken. Although under the plain error rule we will consider allegations of error not brought to the trial court's attention that have a clear capacity to produce an unjust result, see Rule 2:10-2; we generally decline to consider issues that were not presented at trial. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). As the Court has cogently explained:

> Appellate review is not limitless. The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves.

> Although "[o]ur rules do not perpetuate mere ritual[,]" we have insisted that in opposing the admission of evidence, a litigant must "make known his position to the end that the trial court may consciously rule upon it." State v. Abbott, 36 N.J. 63, 76, (1961). This is so because "[t]he important fact is that the trial court was alerted to the basic problem[.]" Id. at 68. In short, the points of divergence developed in the proceedings before a trial court define the metes and bounds of appellate review.
>
> [State v. Robinson, 200 N.J. 1, 19, (2009) (alterations in original).]

Defendant's present contention that Dr. Lanese rendered a net opinion was not raised before the trial court, and we need not consider it in this case.

Nevertheless, admission of Dr. Lanese's opinion was not plain error. In considering whether expert testimony was properly admitted, "we rely on the trial court's acceptance of the credibility of the expert's testimony and the court's fact-findings based thereon, noting that the trial court is better positioned to evaluate the witness' credibility, qualifications, and the weight to be accorded her testimony." In re Guardianship of D.M.H., 161 N.J. 365, 382 (1999) (citing Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607, (1989)). Therefore, we exercise limited review of a trial judge's decision to admit or exclude expert testimony. See Townsend v. Pierre, 221 N.J. 36, 52-53, (2015) ("The admission or exclusion of expert testimony is

14

committed to the sound discretion of the trial court."); <u>Hisenaj v. Kuehner</u>, 194 <u>N.J.</u> 6, 12, (2008) (stating that trial court's evidentiary decision to admit expert testimony is reviewed for an abuse of discretion).

The rule prohibiting net opinions is a "corollary" of <u>N.J.R.E.</u> 703, <u>Townsend</u>, <u>supra</u>, 186 <u>N.J.</u> at 494, which provides an expert's testimony "may be based on facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts in forming opinions on the same subject." Weissbard & Zegas, <u>Current N.J. Rules of Evidence</u>, comment 1 on <u>N.J.R.E.</u> 703 (2017). Thus, the net opinion rule can be considered a "restatement of the established rule that an expert's bare conclusions, unsupported by factual evidence, [are] inadmissible." <u>Buckelew v. Grossbard</u>, 87 <u>N.J.</u> 512, 524 (1981). The net opinion rule "requir[es] that the expert 'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" <u>Pomerantz Paper Corp. v. New Cmty. Corp.</u>, 207 <u>N.J.</u> 344, 372 (2011) (quoting <u>Polzo v. Cty. of Essex</u>, 196 <u>N.J.</u> 569, 583 (2008)).

For example, "a trial court may not rely on expert testimony that lacks an appropriate factual foundation and fails to establish

the existence of any standard about which the expert testified." Id. at 373 (citing Suanez v. Egeland, 353 N.J. Super. 191 (App. Div. 2002)). Therefore, an expert offers an inadmissible net opinion if he or she "cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is 'personal.'" Ibid.

Applying these principles, we discern no basis for defendant's argument that Dr. Lanese rendered a net opinion. Rather, she fully explained the grounds for her conclusions and was subject to cross-examination by three attorneys concerning them. Dr. Lanese is a board-certified child abuse pediatrician. At the time of her testimony, she had specialized in this area for nearly seven years and testified in abuse and neglect cases approximately one to two times per month. She was well qualified, her testimony and written report addressed all the relevant issues, and her conclusions were firmly supported by the facts in the record. Therefore, we discern no error, much less plain error, in the court's admitting her testimony.

We also are not persuaded by defendant's contention that the trial judge failed to give adequate weight to B.F.'s recantation to his family members. Dr. Lanese explained that the specific and detailed account as related by B.F. suggested to her that he did not lie about the abuse. She elaborated:

16                                          A-0752-16T2

When a child says they lied, usually those children can't tell us the further details. They make one statement that, "Oh so and so touched me." And then, they can't tell me how they felt. Or what happened after. They may not know about the pink-topped tube, or the pink tube. He wouldn't be able to tell me that dad laid on him.

Those other statements are what builds the picture of sexual abuse. The lack of detail would make me more concerned that he did lie. But, the fact that he has those details, and for a five-year-old to remember those details, if someone was feeding it to him, they just don't have the ability to remember that well. And, he indicates that he never saw any pictures of naked people; so, being exposed to something like pornography, was not something that he reported to me. So, he couldn't have witnessed something.

So, in the end, I was left to say this is a child who, so far, has been saying that this happened to him. And, when he gets to me, now, he's saying he lied. But he's had a couple days with family, who maybe didn't believe him.

As noted above, B.F.'s previous statements were properly accepted by the trial judge because they were corroborated. <u>N.J. Div. of Child Prot. & Permanency v. Y.A.</u>, 437 <u>N.J. Super.</u> 541, 547 (App. Div. 2014). Unfortunately, however, the trial court did not make any direct findings concerning B.F's purported lie. We do know, however, that the court "found Dr. Lanese to be a highly credible witness in her examination, as well as under cross-examination by the [l]aw [g]uardians, as well as defense counsel."

The record, therefore, supports the court's implicit rejection of B.F.'s purported lie.

We are satisfied that the trial court's omission to explain the basis of this key determination is not fatal to the ultimate finding that the Division established, by a preponderance of the competent material and relevant evidence, that B.F. was abused by defendant as defined in N.J.S.A. 9:6-8.21. The court's decision was consistent with B.F.'s earlier statements, and Dr. Lanese's expert testimony, which the trial judge found credible.

Finally, we are unpersuaded by defendant's argument that the court's findings of fact and conclusions of law were so inadequate as to warrant reversal. Where, as here, "'the evidence is largely testimonial and involves questions of credibility,'" we defer to the trial judge's factual findings. Sipko v. Koger, Inc., 214 N.J. 364, 376 (2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

In sum, we discern sufficient credible evidence in the record as a whole to support the trial court's finding of sexual assault constituting abuse and neglect. R. 2:11-3(e)(1)(A).

Defendant's remaining arguments lack sufficient merit to warrant further discussion in our opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18          A-0752-16T2