106 N.J. Super. 336 (1969)
255 A.2d 798
IN THE MATTER OF THE GUARDIANSHIP OF DARQUITTA COPE AND BETTINA COPE.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1969.
Decided July 8, 1969.
*339 Before Judges GAULKIN, COLLESTER and LABRECQUE.
Mr. Richard S. Semel argued the cause for appellant Betty Cope (Mr. Ronald B. Atlas, on the brief).
Mr. Eugene T. Urbaniak, Deputy Attorney General, argued the cause for New Jersey Bureau of Children's Services (Mr. Arthur J. Sills, Attorney General, attorney).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
This case is here on appeal by Betty Cope from a judgment of the Essex County Juvenile and Domestic Relations Court awarding guardianship, care, custody and control of her two daughters, Bettina and Darquitta, to the New Jersey State Bureau of Children's Services (Bureau). The order terminates all parental rights between the children and their mother and grants the Bureau full power over the person and property of the children, but "without authority to consent to adoption." The mother contends that the competent evidence adduced at trial fails to support this award. We agree.
The Bureau proceeds here under N.J.S.A. 30:4C-15, which provides in pertinent part that a petition for guardianship may be filed whenever "it appears that the best interests of any child under the care or custody of the Bureau *340 of Childrens Services require that he be placed under guardianship." N.J.S.A. 30:4C-15(c). While literally the statutory test is "the best interests of the child," this does not mean that the Bureau need show no more than that the Bureau's care has proved more beneficial to the child than that of its parents. All sections of N.J.S.A. 30:4C, including N.J.S.A. 30:4C-15(c), are "to be administered strictly in accordance with [the following] general principles * * * which are declared to be the public policy of this State:
"(a) that the preservation and strengthening of family life is a matter of public concern as being in the interests of the general welfare;
(b) that the prevention and correction of dependency and delinquency among children should be accomplished so far as practicable through welfare services which will seek to continue the living of such children in their homes;
* * * * * * * *"
As we have said in the analogous context of adoption proceedings, the rights of the child's natural parents are essential factors for judicial consideration.
"The parental relationship is an integral part of the `best interests' test [N.J.S.A. 9:3-27 subd. C]; otherwise any person could adopt a child if he were potentially a better parent than the child's natural mother or father. The welfare of the child is inextricably bound up with the rights of the parent." In re N, 96 N.J. Super. 415, 423 (App. Div. 1967).
Although the Bureau insists that it will return the children to their mother as soon as she is able to care for them, and the order of the court below forbids adoption apparently with this result in mind, the award of guardianship nonetheless terminates parental rights "for all purposes" and vests full and complete control in the Bureau. Any decision to return the children to their mother appears to be completely within the Bureau's discretion.
It is, therefore, incumbent upon the Bureau, or other petitioner for guardianship, to show more than that it will *341 provide a better home for the child. It must demonstrate affirmatively that the child's "best interests" will be substantially prejudiced if he is permitted to remain with his parent  e.g., that his health and development have been or probably will be impaired and that the parent is unlikely or unwilling to change, or that the parent is in some way incapable of caring for the child or unwilling to do so.
The Bureau's petitions for guardianship allege that "it is in the best interests" of the Cope children that they be placed under the Bureau's guardianship because "a potentially dangerous situation of abuse would exist should [Bettina] be returned to Miss Cope at present" and "a potentially dangerous condition of abuse and neglect would exist should Miss Cope request premature removal of Darquitta from placement."
The evidence revealed that in June 1967 Miss Cope consented to the placement of her two young daughters (then ages 3 and 4) in the temporary custody of the Bureau, which housed them at the Youth Consultation Service in Newark. Although this was the only time the Bureau took custody of the children, it had previously exercised supervisory care over Darquitta after Miss Cope had placed her in a foundling home, and, in June 1965, Miss Cope had agreed to in-home supervision by the Bureau. In late 1965 Miss Cope placed the children in the Bureau's day care center while she worked. Miss Cope visited the children in September 1967 and apparently removed Bettina from the Bureau. Custody of the child was apparently reasserted by the Bureau after about a month. Miss Cope testified that she had intended the commitment to be temporary only and that she had intended to take the children back when she was rested.
The evidence supporting the Bureau's petition for guardianship fell into two general categories: testimony concerning the condition of the children after they were placed with the Bureau in June 1967, and testimony tending to show conditions in the Cope home. In both cases, almost all of the evidence adduced was hearsay testimony. *342 Staff members from the Bureau were permitted to testify, over repeated objections by counsel for Miss Cope, to reports of the physical and mental condition of the children while in the Bureau's custody, as well as to reports that Miss Cope mistreated the children when they were at home.
Taken together, this evidence showed nothing more than that the children were in poor physical and mental condition when the Bureau first received them; that they flourished while in the Bureau's care, and that they retrograded when the mother visited them and when she kept Bettina with her. There is very little in the competent evidence to establish the potentiality for abuse and neglect alleged by the Bureau in their petitions. Aside from the hearsay "reports" of mistreatment in the Cope home, the only competent evidence in this regard was the testimony of an Englewood police officer that, in response to a call from an unidentified resident, he appeared at the Cope apartment and found Miss Cope holding an ironing cord and one of the children "in hysterics." The officer found no evidence of physical abuse of the child and was unable to ascertain the cause of the child's crying. Miss Cope told him it was none of his business and she would discipline her children as she saw fit. The officer stated that the apartment was "untidy."
As for the period in September 1967 during which Miss Cope "snatched" Bettina from the Bureau, there was no showing that the mother injured or otherwise mistreated the child. Although it was testified that the purpose of the commitment was "to permit the children to have the kind of services that would benefit them and also to permit the mother to undertake some care and treatment for herself," we are not informed as to what, if any, treatment was needed by Miss Cope. In particular, there was no showing in the record that she was in any way incapable of caring for her children.
The trial court's "findings" were simply that the children "were in a condition which indicated that they were deprived children." There was no explanation of what the court *343 meant by "deprived" here, no indication of the facts upon which this conclusion was based, and no finding that the children had been abused or neglected by their mother or that she was incapable of caring for them.
In view of the fact that almost all of the evidence presented in support of the award was hearsay, we are presented with the difficult question of what type of evidence is to be considered competent in a proceeding of this type. Although we are not dealing here with a criminal proceeding against the parent, the allegations of the petitions concern her conduct and it is quite apparent that substantial rights of hers are involved. In a situation such as this it is of great importance that the evidence upon which judgment is based be as reliable as the circumstances permit and that the answering parent be given the fullest possible opportunity to test the reliability of the petitioner's essential evidence by cross-examination.
On the other hand, we are dealing here with a statutory scheme established to provide a means by which the Bureau or other petitioner may obtain guardianship of children in the Bureau's custody. As the Bureau and the court below both properly indicate, a rule requiring all Bureau personnel having contact with a particular case to give live testimony on all the matters within their personal knowledge would cause an intolerable disruption in the operation of the Bureau.
As a result, it becomes necessary to allow certain evidence to be produced in a hearsay form while seeking to give full protection to the rights of the parent. In reaching this balance, we conclude that in cases of this type the Bureau should be permittted to submit into evidence, pursuant to Evidence Rules 63(13) and 62(5), reports by Bureau staff personnel (or affiliated medical, psychiatric, or psychological consultants), prepared from their own first-hand knowledge of the case, at a time reasonably contemporaneous with the facts they relate, and in the usual course of their duties with the Bureau.
*344 Reports of this type, prepared by the qualified personnel of a state agency charged with the responsibility for overseeing the welfare of children in the State, supply a reasonably high degree of reliability as to the accuracy of the facts contained therein. The parent remains free to offer evidence contradicting any statements present in such reports and, of course, the trier of the facts may in his discretion call for live testimony on any point.
In the event that such reports contain conclusions drawn from the facts stated in them, the reports may still be admitted, but they should be treated as no more than prima facie evidence of the validity of the conclusions contained in them. If the parent produces evidence refuting such conclusions, petitioner would then have the burden of producing live testimony in order to establish their validity.
In the case of conclusionary statements, the author should be a person qualified to give an opinion on the subject under discussion (e.g., a psychiatrist or psychologist for diagnosis of mental disease or impairment), and no conclusion should be received unless the report contains a statement of the facts or procedures upon which it is based.
As to oral or written reports from neighbors, the police or other persons, the usual rules governing admissibility of hearsay evidence should apply.
In the present case it appears that several of the Bureau's witnesses testified from written reports prepared by other Bureau personnel. None of these reports was placed in evidence (despite a request by counsel for Miss Cope that they be offered) and we have no way of knowing from the record whether the testimony fully and accurately reflected their contents. Nor did Miss Cope or her counsel have the opportunity to examine these reports. None of the authors of these reports were called to testify, and nothing was introduced to establish the circumstances under which they were prepared. The testimony of the witnesses was "double" (sometimes "triple") hearsay, making verfication of its accuracy virtually impossible.
*345 Since a reversal and remand will be necessary, a word might be said about the "pleadings" used in this case and their relation to the evidence adduced. N.J.S.A. 30:4C-15 states that "a petition, setting forth the facts in the case, may be filed with the juvenile and domestic relations court * * *" (emphasis added). Petitioner in the instant case set forth nothing but the broadest of allegations of potentiality for abuse and neglect, with no "facts in the case" to support them. Under this state of affairs it is difficult to see how the mother here could adequately prepare a defense to the charge of abuse and neglect. Having, as she does, a very substantial interest in the outcome of the case, and in view of the fact that the charge in the petitions is directed at her conduct or potential conduct toward her children, she is entitled to be reasonably apprised of at least the general factual basis for the allegations in the petitions.
Moreover, it follows from this that the proofs at trial must support the allegations of the petitions in order for petitioner to succeed, and that the trial court should present findings of fact sufficient to enable us to determine if this has been done. The fact that the proofs support other, theretofore unspecified, grounds for award of guardianship, should not be sufficient, since the defending parent has had no opportunity to prepare a defense to the undisclosed allegations. This does not mean that the parties and the court are bound rigidly and precisely to the wording of the petitions. It does mean that the parent has a right to be fairly apprised of the grounds upon which petitioner will rely in seeking guardianship of his children and the grounds upon which the court has rendered its award.
The judgment is reversed and the cause remanded for service of adequate petitions, a full hearing on the merits thereof, and a decision by the court based on sufficient findings of fact, in conformity with this opinion. The Bureau shall retain custody of the children, with such reasonable visitation privileges as it may fix, pending the outcome of this case. Of course, nothing herein is to be taken as an expression of our opinion as to the ultimate merits of the case. That will be for the trial court to decide.