# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2634-16T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

S.M., G.P., and A.G.,

      Defendants,

and

S.G.,

      Defendant-Appellant.

_____

IN THE MATTER OF M.M.,

      a Minor.

_____

Argued December 12, 2018 – Decided May 15, 2019

Before Judges Accurso, Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FN-06-0088-16.

Richard A. Foster, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Richard A. Foster, of counsel and on the briefs).

Nancy R. Andre, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Nancy R. Andre, on the brief).

Olivia Belfatto Crisp, Assistant Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Olivia Belfatto Crisp, on the brief).

PER CURIAM

Defendant S.G. appeals from a January 19, 2017 fact-finding order, now final, that she abused her seven-year-old grandson M.M. (Mike), in violation of N.J.S.A. 9:6-8.21(c), by inflicting excessive corporal punishment.[1]  Because we conclude the court's findings are not supported by substantial credible evidence in the record, we reverse.

---

[1]  Mike is a fictitious name used to protect the child's privacy; the same reason we use initials for defendant.

A-2634-16T1

On the Monday after Thanksgiving in 2015, Mike's school called the Division of Child Protection and Permanency about marks on the back of his neck. He was driven to the Cumberland County Prosecutor's Office for a video-recorded statement observed by the Division's intake worker. Mike told the detective he got the marks on the day before Thanksgiving when he was trying to go outside instead of remaining in his room as he had been told. He said his grandmother caught him by the collar, twisting up his shirt and pinching him with her nails, leaving several deep scratches. According to Mike, his mother was sleeping in another room when it happened, but his grandmother later told her about it.[2]

Asked after a break whether anything else had happened, Mike reported his grandmother threw him against a wall and picked up a stick she found inside, hitting him with it while cursing at him. He said it happened because he was not listening and was supposed to be standing in the corner. He also told the detective he had been suspended from school "for saying not nice things." Mike claimed his grandmother hit him twice with the stick on his side and once with

---

[2] Mike was born when his mother was fourteen years old. His grandmother has had sole legal and physical custody of the boy since shortly after his birth.

her hand. He also claimed his uncle had slammed him to the floor because he was not standing in the corner. Mike denied having ever been hit before and told the detective it only happened because he got in trouble.[3]

The Division did not seek to admit the video at the fact-finding hearing. Instead, it relied on brief testimony by the intake worker, the redacted investigation report she prepared and photographs she took of Mike showing the scratches on his neck and two linear marks on his side and two on his back.

The intake worker testified she interviewed Mike after he was examined at CARES (Child Abuse Research Education and Service) Institute. Consistent with his report to the detective, Mike told the case worker he was making noise and trying to go outside when his grandmother grabbed him by the back of his shirt. He told the worker his grandmother's "nails were sharp and made the 'rash' on his neck." Mike claimed his grandmother used nail clippers to cut off her nails after it happened, because she did not want to hurt him again. He also claimed his grandmother cursed at him and that his mother was awake and could see him as his grandmother grabbed him outside her room.

---

[3] Defendant claims the Prosecutor did not pursue the investigation or lodge any charges against her.

The case worker had learned from the CARES doctor that Mike reported the stick his grandmother hit him with "was from a plant that grows in the house."  Mike did not, however, repeat that to the case worker.  Although the worker testified Mike "remained consistent that he had been hit with a branch," that is not reflected in the investigation summary admitted into evidence.  Instead, the investigation reflects that when the worker asked Mike about the marks the worker had seen on his back and side, Mike said he thought one of them was old.  Mike told the worker he could not remember how he got them.  Mike did not tell the case worker his grandmother hit him with a stick or slammed him into a wall.  He told the worker that after his grandmother scratched his neck, she later made him stand in the corner after he misbehaved in his bath.  Mike claimed he was in the corner when his uncle threw him to the ground, and no one else was around.

The worker learned from Mike's school that he was classified as "other health impaired (ADHD)" and "displays a great deal of attention seeking behavior."  Mike was reported as performing below grade level with "a great deal of trouble focusing."  The worker testified defendant initially admitted she had accidently scratched Mike when she grabbed him as he was trying to run from her.  When she later looked at Mike's neck, however, she claimed she did

not cause those marks. She denied ever hitting Mike with a stick, and said she had no knowledge of the marks on his back or side. Mike's mother claimed not to have seen her mother grab Mike and was not aware he had any injuries.

On cross-examination, the worker acknowledged Mike did not need medical treatment for his injuries. She also admitted seeing nothing in defendant's home "that would be consistent with what [Mike] described" his grandmother used to hit him. Asked about the timing of the two sets of injuries, those to his neck and those caused by the stick, the worker said Mike "was very unclear" about that, but the worker did "not believe that they occurred at the same time."

Defendant testified in her own behalf. She claimed she accidently scratched Mike when she "went to go grab him" when he ran from her after being told to clean his room. He told her she had scratched him. She told him she was sorry, "washed it up," clipped her nails and did not think further about it. Defendant claimed she did not intentionally scratch Mike and had not been trying to punish him. She denied she cursed at him. Defendant also denied hitting Mike with a branch or causing the marks on his back or side. She claimed she typically disciplined Mike by giving him a time out or making him stand in the corner.

A-2634-16T1

After hearing the testimony, the judge put his decision on the record.  The judge found that on the Wednesday before Thanksgiving, Mike "after having been suspended from school . . . , was apparently misbehaving and not cleaning up his room and he was running around the house, as young children who may have the conditions that the child has will do, and that at some point his grandmother grabbed him by the shirt," and in an instance of "arguably excessive corporal punishment," caused the marks depicted in the photograph P-1 in the record.  The judge stated he found "[p]erhaps more disturbing" P-3, the picture of the marks on Mike's side, "and the one that really bother[ed] [him]" was P-4 the picture of the marks on Mike's back.

The judge continued:

> I'll note for the record that the child said that a stick injured him. And perhaps that is what happened. But me, having the honor of having sat here as a judge for fifteen years, . . . that injury on P-4 doesn't look like a stick, it looks like a wire.  It looks like some kind of a cord.
>
> And one of the reasons why I ask the question is — and the sad thing is I can't find this by a preponderance of the evidence, so what I am saying at this point is pure speculation on my part based on my years of experience as a judge, sadly I can't find that by a preponderance of the evidence.  I'll bet when this child got suspended from school . . . that he got hit with a cord of some type as punishment for that.

A-2634-16T1

I am pretty sure that's what happened in my mind, but I can't find it. I absolutely can't find that that happened. All I can find is that the child said that he was hit by a stick. The injury in P-4, I'm pretty sure, is a cord, and I'll bet he got suspended from school and I'll bet he got hit with a cord.

But he doesn't say that, and nobody says that happened, so I have absolutely no proof other than a picture which, to me, based on my years of experience in all the time, sadly, I've seen children that have been hit by cords from irons most of the time, that's what it is most of the time, a cord from an iron, but that's what I see in P-4, but I can't find it because the child doesn't say that happened, the parent — the grandmother doesn't say anything like that happened, and the mom doesn't say anything like that happened. So I can't find that. All I can find is that the child said he was hit by a stick and that the injuries that are shown on P-3 and P-4 don't, under the circumstances, do not, as [defense counsel] argues, evidence injuries that I would expect to have occurred by a stick. But the child says he was hit by a stick.

The judge found the intake worker's testimony credible and did not believe defendant's testimony. He found Mike's account of how he received the scratches to his neck "corroborated by the injuries" depicted in P-1. As for corroboration of Mike's account of his grandmother hitting him with a stick, the judge stated he was

a little concerned about the child being said that he was hit by a stick because I am not sure that the injuries that are shown are evidenced by that. I think the injuries that are shown, I've already made some speculation as

to the same, which sadly I can't find by a clear preponderance of the evidence.

> I'm not sure that in regard to that particular situation that he's truly explaining what happened. And there was some testimony about the child perhaps being intimidated in some way and being told that if he was totally honest with the Division that bad things would happen to him. Maybe that caused him to not say what really happened as to that. Obvious to me, wire mark across his back. But he said it was just a stick and I'll note that for the record. And the fact that no stick was found doesn't impress me in any way whatsoever.

The judge found that even assuming Mike's mother "was there when her mom scratched her son's neck and . . . was there when whatever else happened to her son happened," he could not find her failure to intervene or report these events rose to the level of willful and wanton misconduct. As to defendant, the judge stated:

> I am pretty sure that I don't know what really happened here and I am pretty sure that the injuries that occurred to the child's neck were in — were, as I have already labeled, bordering on inappropriate corporal punishment. And I do, in fact, find that something happened to the child that he says was with a stick and I've already made my speculation that I am deeply concerned that in all probability, the child received some pretty serious corporal punishment when he got suspended from school, when he wouldn't clean his room.

> I'm pretty sure, [defendant], that you have been rendering inappropriate corporal punishment to your

A-2634-16T1

grandson and that you did it at least a couple of times on — in and around this time that week, and without any question in my mind, I can find that you are negligent as to that, having found that you did, in all probability, yank the child around by his shirt in a far more serious way than you have admitted that you did. It was probably a really ugly scene for him to get these scratches on his neck that bad, assuming that it was an accident, and that you pulled and yanked him around because he wouldn't clean his room after being suspended from school to the point where he scratched his neck the way that he scratched his neck and it looked like it does five days later.

And I can find that you were clearly negligent — he says you hit him with a stick. Whatever you hit him with, it left marks and that means it was, in my mind, excessive in this case.

And so it gets to the point where I have found that you did place the child's mental, physical or emotional condition in imminent danger of being impaired by your rendering of corporal punishment that I am finding that you have done.

I do, in fact, find also that you did not properly supervise the child and did unreasonably inflict and allow to be inflicted harm on the child — actual harm, not just substantial risk thereof, and I do, in fact, find that in this case there was corporal punishment that I have said bordered on excessive and I believe in sense (sic) and all probability was excessive in regard to the situation.

Acknowledging the line between mere negligence and willful and wanton misconduct can be difficult to discern, the judge found

10

in this case we're in that gray area because it's far more than a slight inadvertence, but I don't find that mom — that the grandmother, the primary residential parent of this child, [defendant], had a malicious purpose to intent — to inflict injury.

Clearly she was angry at the child when the neck was scratched and I feel that she was angry at the child. And although she denies it ever occurred and mom in her interview says that she never saw any such thing occur and the child says he was hit by a stick and the injuries don't really evidence that, but we are somewhere between slight inadvertence and malicious purpose to intend injury.

Concluding defendant did not intend to injure her grandson, the judge

nevertheless found

on at least a couple of occasions, because I find she did scratch the neck of the child and acted in a way probably out of anger towards the child based on the totality of circumstances, she scratched his neck, and according to the child, and I find his testimony to be truthful — or not testimony, but I find his statements to [the intake worker] to be truthful and able to be considered by me under [N.J.S.A. 9:6-8.46(a)(4)], he received additional corporal punishment, which he says was by a stick, and there are marks left on his body that may not be injuries that you would see from a stick, but clearly something caused marks to be entered on his body and he said he was corporally punished.

And when I combine both of the events together, happening in a very near proximity to each other and not believing [defendant] and believing what the child says, finding [the intake worker's] testimony to be truthful and credible, and finding the totality of the

circumstances that this child, over a couple of days, had a couple of incidents when he was strongly disciplined, I do, in fact, find that although close, it goes over the line and is reckless and is, in fact, in violation of [N.J.S.A.] 9:6-8.21 and that grandmother did unreasonably inflict harm on this child by engaging in excessive corporal punishment on at least one occasion that had — was subsequent to inappropriate corporal punishment by grabbing the child's neck and causing these scratches. And the totality of the circumstances, everything that I see, I find amounts to a preponderance and I enter a finding of abuse or neglect against [defendant] for the reasons stated on the record at this time.

On appeal, defendant argues the Division's failure to corroborate Mike's statement that defendant hit him with a stick leaves the trial court's finding of abuse and neglect without adequate support in the record. Based on the trial court's other findings, we agree.

As has long been recognized, an abuse or neglect proceeding implicates a parent's substantial rights. See In Re Guardianship of Cope, 106 N.J. Super. 336, 343 (App. Div. 1969). Thus "it is of great importance that the evidence upon which judgment is based be as reliable as the circumstances permit and that the answering parent be given the fullest possible opportunity to test the reliability of the [Division's] essential evidence by cross-examination." Ibid. Pursuant to N.J.S.A. 9:6-8.46(a)(4), "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence;

provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." N.J. Div. of Youth & Family Servs. v. L.A., 357 N.J. Super. 155, 166 (App. Div. 2003).

The only corroboration the Division offered of Mike's allegations against his grandmother were the photographs in evidence and defendant's statements to the intake worker. Leaving aside defendant's own testimony at the fact-finding hearing, Mike's allegations as to the injuries to his neck were readily corroborated by defendant's statements to the intake worker, admissible against her as a party in the abuse or neglect action, N.J.R.E. 803(b)(1), and the photographs, which the judge found depicted "fairly obvious scratch marks on the neck."

Defendant, however, consistently denied ever hitting Mike with a stick. The only corroboration the Division offered as to that allegation were the two photographs of Mike's back and side.[4] The Division did not rely on that

_____

[4] The Division asserts Mike's statements were also corroborated by the intake worker's testimony that Mike "provided consistent and credible statements regarding what occurred." Mike did not testify. The court was thus precluded from any finding as to his credibility based on the worker's assessment. See L.A., 357 N.J. Super. at 168-69. Further, the consistent repetition of a perceived credible statement does not, on its own, constitute corroboration. See N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 523 (App. Div. 2017). Finally, as noted, Mike never repeated the allegation of being hit with a stick to the worker.

allegation in substantiating the abuse and neglect allegations against defendant. It based its substantiated finding only on the injuries to Mike's neck, not on the claim he was hit with a stick. And although the Division had Mike examined at CARES Institute and received a report from the examining physician, it did not call the doctor to testify or offer the report in evidence. Thus the Division proffered no expert testimony that the marks on Mike's back and side depicted in the two photos in evidence were as a result of him being struck with a stick, or, indeed, struck at all.

More important, the judge did not find the photographs corroborated Mike's account of being hit with a stick. Instead, he found "the injuries that are shown on P-3 and P-4 don't, under the circumstances, . . . evidence injuries that I would expect to have occurred by a stick." Although it is well established that corroboration "need not relate directly to the alleged abuser," it must "provide support for the out-of-court statements." N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 436 (App. Div. 2002). Because the judge expressly found the photographs did not provide that support here, it was error to base an abuse or neglect finding on Mike's uncorroborated allegation of being struck with a stick. See N.J.S.A. 9:6-8.46(a)(4); L.A., 357 N.J. Super. at 166-67 (holding a witness's acknowledgment of a debt too indirect to provide

corroboration of minor's out-of-court statement). That the judge was willing to "bet" based on the photographs and his fifteen years on the bench that Mike "got hit with a cord of some type," is obviously not support for the child's statement that he was hit twice with a stick.[5]

Although "a single incident of violence against a child may be sufficient to constitute excessive corporal punishment," Dep't of Children & Families, Div. of Youth & Family Servs. v. K.A., 413 N.J. Super. 504, 511 (App. Div. 2010), the trial court judge did not find the injuries inflicted by defendant on Mike's neck constituted excessive corporal punishment. Instead, he termed that incident as one "bordering on inappropriate corporal punishment." The judge further did not find defendant acted with "a malicious purpose" or intended to injure her grandchild. Instead, the judge based his finding of abuse or neglect on "the totality of the circumstances," namely, that defendant "did unreasonably

---

[5] Although we acknowledge the judge's repeated statements that his comments were "pure speculation," they were nevertheless inappropriate. Even if not the "gap-filling" defendant contends, and our Supreme Court prohibits, see N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 28 (2013), a judge "speculat[ing]" about what he would "bet" happened in an abuse and neglect matter and commenting that he "sadly" could not make a finding based on his speculations could readily convince a litigant she was not receiving a fair hearing, see State v. McCabe, 201 N.J. 34, 43 (2010) (noting the Supreme "Court recognized nearly a half century ago, justice must satisfy the appearance of justice" (quoting DeNike v. Cupo, 196 N.J. 502, 514 (2008))).

inflict harm on this child by engaging in excessive corporal punishment on at least one occasion that . . . was subsequent to inappropriate corporal punishment by grabbing the child's neck and causing these scratches."  Because the court's abuse and neglect finding, which the judge termed "close," was based on "combin[ing] both of the events together," it cannot be supported based on the injuries to Mike's neck, standing alone.

In sum, we find Mike's statement that his grandmother hit him with a stick was not corroborated and thus was improperly admitted to support an abuse or neglect finding against defendant.  Further, without a finding that defendant engaged in excessive corporal punishment by hitting Mike with a stick, the court's abuse and neglect finding, which was based expressly on the totality of the circumstances and by combining that event with the prior injuries to Mike's neck, lacks support in the evidence.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2634-16T1