# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3704-18T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

T.L.M.,

     Defendant-Appellant,

 and

Y.R.F.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.Y.M.,
and E.Y.T.M.,

     Minors.

_____

Submitted January 27, 2020 – Decided February 18, 2020

Before Judges Rothstadt, Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0021-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Laura Orriols, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Merav Lichtenstein, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Louise M. Cho, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant T.L.M. appeals from an April 11, 2019 guardianship judgment, ordering the termination of her parental rights to her sons, A.Y.M. (Austin) and E.Y.T.M. (Evan).[1]  On appeal, defendant argues that the Dodd removal,[2] <u>see</u>

---

[1] One of the children's fathers is unknown, and the other putative father failed to participate in the trial or appeal from the final judgment.  Additionally, pursuant to <u>Rule</u> 1:38-3(d), we use initials and fictitious names to protect the confidentiality of the participants in these proceedings.

[2] "A 'Dodd removal' refers to the emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82.  The Act was authored by former Senate President Frank J. 'Pat' Dodd in 1974."  <u>N.J. Div. of Youth & Family Servs. v. N.S.</u>, 412 N.J. Super. 593, 609 n.2 (App. Div. 2010).

N.J.S.A. 9:6-8.29, of one of her children was improper, that the Division of Child Protection and Permanency (Division) did not prove all four prongs of the statutory best interests of the child test under N.J.S.A. 30:4C-15.1(a), that certain documents were improperly admitted under N.J.R.E. 803(c)(6) and Rule 5:12-4(d), and Rule 5:12-4(d) is unconstitutional. The Division and the Law Guardian contend that the judgment and order should be affirmed.

After reviewing the record in light of the applicable legal standards, we affirm substantially for the reasons stated by Judge Nora J. Grimbergen in her written decision issued with the guardianship judgment, in which she found that the Division proved the four prongs of the best interests standard articulated in N.J.S.A. 30:4C-15.1(a). We conclude there is substantial credible evidence in the record to support the judge's determination that was based primarily on defendant continuously refusing to participate in treatment for her substance abuse and mental health issues, which prevented her from being a fit parent.

The facts derived from the record as found by the trial judge are summarized as follows. Austin was born in February 2017, and Evan was born in May 2018. At the time Austin was born, defendant already had two additional children from other relationships who were no longer in her custody. Those two children were the subject of the Division's investigations between 2013-2016.

A-3704-18T3

Although defendant was never substantiated for abuse or neglect, the Division had concerns about defendant's need for substance abuse treatment before she could care for her children. The concerns were addressed when a court ordered in a custody action that the two children be placed with their relatives because defendant refused to seek any treatment.

The Division became involved with Austin when a reporter contacted the Division in April 2017 about one of defendant's older children being found at the bottom of a hotel swimming pool before he was revived and able to survive his near drowning due to the medical assistance provided by a hotel guest. After investigating how the child nearly drowned, the Division determined from defendant and her younger sister that defendant left the child under the supervision of another person at the swimming pool knowing that her child could not swim and leaving him without a life vest.

Defendant initially attempted to arrange shared custody of Austin with his maternal grandmother, but the effort failed when one or both of them failed to pursue the application in court. Later, the Division was informed that defendant changed the child's placement to his godmother, which the Division later approved subject to the godmother's agreement not to let defendant remove the child from her. However, in July 2017, the Division conducted a Dodd removal

and placed Austin with a resource family when defendant threatened the godmother with harm if she did not turn Austin over to defendant. When the Division provided defendant with notice of the Dodd removal, defendant informed a Division worker that she failed to seek any treatment for her substance abuse. In its supporting complaint filed for care, custody, and supervision under N.J.S.A. 30:4C-12 (Title Thirty), the Division alleged defendant did not have stable housing or income, that she continuously failed to get substance abuse treatment, and repeatedly threatened to take Austin.

During the ensuing months, the Division made arrangements for defendant to visit with her child and have her evaluated for and attend substance abuse treatment programs. In addition, as a result of a family meeting that included a family friend willing to take custody of the child, the Division investigated the family friend for placement, but she was ruled out based on her having an open case with the Division.

Court orders directed toward reunification were issued in the Title Thirty litigation directing defendant to secure income and housing, and to undergo a psychological and substance abuse evaluation. Although defendant did not seek out the substance abuse treatment, she did participate in a psychological evaluation.

A-3704-18T3

During the evaluation, defendant admitted hearing her dead brother talk to her, being depressed, and continually using marijuana on an almost daily basis. She also confirmed that she did not have stable housing, was living with various friends and family members, and that she did not have a job.

The psychologist found that defendant had anger management issues and that defendant demonstrated she suffered with depression and anxiety, which if left untreated, prevented her from safely parenting her children. The doctor recommended that defendant be evaluated by a psychiatrist, participate in therapy and outpatient drug treatment, have supervised visits with her child, obtain and maintain appropriate housing and employment, and participate in parenting skills training programs. These recommendations were later incorporated into additional court orders.

Pursuant to the court's order, a psychiatric evaluation and individual therapy were arranged for defendant. At the psychiatric evaluation, defendant acknowledged her substance abuse, that she used marijuana and "Molly (MDNA, Ecstasy)" within the past three months. She indicated that she: had been depressed since Austin's birth, had a history of suicide attempts, had no support, got treatment in the past due to her anger issues, she was "sad all the time," "her sleep was impaired," had no appetite, "was easily frustrated and

angered," had issues with concentration, and heard the voices of her deceased brother and aunt every day. Defendant stated that she used marijuana to "calm her down and that it [took] her mind off of her problems, help[ed] her sleep, and help[ed] with her appetite."

The psychiatrist diagnosed defendant with various disorders and recommended that defendant be medicated, referred to a substance abuse treatment program in a dual diagnosis program, which would address both her mental health and substance abuse issues, and after she completed a program, engage in therapy. In accordance with the doctor's recommendations, the Division made referrals for these services, but defendant failed to significantly comply with any of them.

In the meantime, after already ruling out defendant's mother, her friend who had a case with the Division, and the child's godmother as possible placements, the Division at defendant's request, contacted a cousin from North Carolina who indicated she was willing to have Austin placed with her. The Division initiated an interstate evaluation request, but after the Department of Social Services in North Carolina met with the cousin on March 23, 2018, and received one phone call from her on April 23, 2018, there was no additional contact, which prompted North Carolina to close the case on May 2, 2018.

A-3704-18T3

Additionally, in May 2018, defendant gave birth to Evan. Both mother and son tested positive for marijuana, and although defendant admitted she used marijuana a month before Evan's birth, the Division did not substantiate defendant for abuse or neglect because the child did not display any withdrawal or other symptoms related to the marijuana. However, defendant informed the Division that she did not have any means to support or care for the infant until she "gets herself together." The Division established neglect based upon defendant's mental illness and her failure to comply with referrals for treatment, which affected her "sound judgement and rational behavior," and "created a real and significant risk . . . that [defendant's] actions or inactions placed [Evan] at a risk of harm."

The Division amended its complaint to also seek custody of Evan. The court then approved Evan's placement with the same resource family as Austin and ordered defendant to comply with substance abuse and mental health services that were to be provided by the Division. In June 2018, the court approved the Division's permanency plan for Austin, recommending termination of parental rights and adoption.

Thereafter, defendant ceased contact with the Division. She last visited Austin in early fall 2018, appeared at a hearing in one matter in December 2018,

had her last visit with Evan at that hearing, sporadically participated in services offered to her, and never attended additional scheduled psychological or bonding evaluations.

In August 2018, the Division filed its initial guardianship complaint as to Austin and in December amended it to include Evan. Shortly after, the psychologist who examined defendant earlier, conducted bonding evaluations. As to Austin he concluded, the child considered his resource parents as his psychological parents and that, "he would likely [face] both significant and enduring harm as there is no other consistent, healthy attachment figure available to mitigate harm." The doctor concluded that Evan, because of his age, "ha[d] not yet internalized the representation of a consistent parental figure." However, the doctor observed that Evan's resource parents were his "only consistent caregiver" since leaving the hospital at the time of his birth. Further, he found it important that Evan remain together with his brother, as that would be beneficial to them both. Defendant, who by that time had not exercised any visitation with her children for four months, did not appear for the bonding evaluation.

Defendant also did not appear at the guardianship trial until the judge rendered her decision, nor were any witnesses offered on her behalf. The only

9

witnesses were the psychologist and a Division caseworker. The psychologist testified consistent with his evaluation of defendant. He further indicated that at the time the evaluation was completed, defendant "was not a viable parenting option for the children. If she were, [he] would have recommended immediate reunification."

The caseworker testified about the Division's involvement with the family and that throughout the process, defendant was uncooperative. While defendant attended the psychological evaluation, she only minimally went to her children's supervised visits and continuously failed to address her mental health issues.

During trial, defendant's attorney objected to several documents being admitted into evidence, which included screening and investigation summaries. Defendant's attorney also argued that other documents from family therapeutic programs and other substance abuse related facilitates were also inadmissible.

In response to defendant's arguments, the Division agreed to redact "third-party hearsay statements," except for one document. The Division wanted to admit the documents "just for the purpose of showing that a call came into the Division and the Division then acted upon that call." For the one unredacted document, it was the Division's position that the testimony of the reporter was admissible because the reporter was a substance abuse worker in a program

selected for defendant by the Division, which made the reporter a Division consultant. It argued pursuant to In re Guardianship of Cope, 106 N.J. Super. 336, 343-44 (App. Div. 1969), N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 500-02 (App. Div. 2016), and Rule 5:12-4(d), that the information was admissible as a business record exception.

The judge found that the documents were admissible under N.J.R.E. 803(c)(6) and Rule 5:12-4(d). The judge indicated that these organizations were consultants of the Division and did not believe they were independent providers. The judge stated that, even though the Division did not create the documents itself, "the Division referred [defendant] and the children to these various services, so they [were] consultants" and therefore, admissible.[3]

After considering all the unrefuted evidence, the judge issued her decision and entered the guardianship judgment terminating defendant's parental rights to Austin and Evan. In the trial judge's written decision, she initially made credibility findings, concluding that both the psychologist and the caseworker were credible and giving reasons for her findings. The judge then found that the

---

[3] Notably, the judge admitted the report of the psychiatrist, who did not testify at trial, for the limited purposes of establishing the Division's reasonable efforts and for statements made by defendant.

A-3704-18T3

Division established "clearly and convincingly by substantial and credible evidence" that defendant's parental rights should be terminated.

Applying the four prongs of the best interests test, Judge Grimbergen, found that defendant's use of marijuana, failure to get mental health and substance abuse treatment, being inconsistent in attending visits with her children and parenting skills classes, and the need for permanency supported the finding that Austin's and Evan's "safety, health, [and] development, [would] be endangered if the . . . relationship between them and [defendant] [was] not severed." Under prong two, the judge found that defendant's non-compliance with the many services the Division attempted to provide to her and her unwillingness to change, supported a finding that the Division's proofs satisfied that prong.

Under prong three, the judge found that the Division "offered [defendant] psychological and psychiatric evaluations with different professionals, a bonding evaluation, individual therapy, parenting classes, visitation, substance abuse assessments, and various referrals to follow up with [those] recommendations," which defendant had failed to "meaningfully" pursue. The Division even considered alternative routes that would not require a termination of defendant's parental rights.

12

As to the last prong, the judge concluded that the evidence established that severing the relationship between the resource parents and Austin would do more harm than good. As to Evan, while the psychologist did not think that the child would "suffer significant and enduring harm from severing his relationship with his resource parents, there [were] no other options with regards to permanency" besides the resource parents. The judge found the resource parents to be "the only consistent, accessible and responsive caregivers in [Evan's] life since birth, shy of five days." The judge also found the importance of keeping Austin and Evan together, as explained by the psychologist, which demonstrated the need for the two to stay with their resource family. The judge entered the guardianship judgment and this appeal followed.

Our review of a Family Part judge's decision to terminate parental rights is limited. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 278-79 (2007). We defer to the judge's credibility findings and factual determinations because the judge has specialized knowledge, as well as a better perspective than a reviewing court having observed the witnesses firsthand. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 427 (2012); Cesare v. Cesare, 154 N.J. 394, 412 (1998).

13

In determining whether to terminate a parent's rights to her child, the best interests of the child typically call for stability and permanency, which are "favored over 'protracted efforts for reunification[.]'" N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 484, 491-92 (App. Div. 2012) (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004)). Due to the severity of termination and its effect on parents' constitutional rights, however, the proceedings require satisfaction of very strict criteria. In re Guardianship of J.N.H., 172 N.J. 440, 471 (2002). In such cases, "[p]resumptions of parental unfitness may not be used in proceedings challenging parental rights and all doubts must be resolved against termination." N.J. Div. of Youth & Family Servs. v. L.M., 430 N.J. Super. 428, 442 (App. Div. 2013) (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 606 (2007)). Parental rights therefore should only be terminated "with caution and care, and only in those circumstances in which proof of parental unfitness is clear." F.M., 211 N.J. at 447.

Termination is warranted where the Division can meet by clear and convincing evidence the four statutory elements set out in N.J.S.A. 30:4C-15.1(a). The factors often overlap. M.M., 189 N.J. at 280.

As already noted, we conclude, for the reasons stated in Judge Grimbergen's thoughtful written decision, the Division met the clear and convincing standard under the best interests test, warranting the termination of defendant's parental rights. We find no merit to defendant's arguments to the contrary and conclude that that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We only add that we do not consider defendant's contentions that were not raised before the trial judge about her child's initial removals and the alleged pendency of custody actions. See N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 339 (2010) ("Issues not raised below will ordinarily not be considered on appeal unless they are jurisdictional in nature or substantially implicate the public interest."). In any event, we conclude they have nothing to do with the guardianship action. Any challenges should have been raised in the earlier child protective or custody actions.

Defendant's remaining arguments about Judge Grimbergen's admission of documents as being in conformity with Rule 5:12-4(d) are equally without merit.

At the outset, we observe "[a]s a general rule with respect to the exclusion or admission of evidence, we afford '[c]onsiderable latitude . . . [to a] trial court in determining whether to admit evidence, and that determination will be

reversed only if it constitutes an abuse of discretion.'" N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 521 (App. Div. 2017) (second, third, and fourth alterations in original) (quoting N.T., 445 N.J. Super. at 492).

Division reports are admissible as business records under N.J.R.E. 803(c)(6), if they "meet[] the standards of N.J.S.A. 9:6-8.46(a)(3), Rule 5:12-4(d), or Cope." N.T., 445 N.J. Super. at 496.

> [T]hose authorities allow the admission of . . . factual statements in the report made to the author by [the] Division 'staff personnel (or affiliated medical, psychiatric, or psychological consultants), [made based on] their own first-hand knowledge of the case, at a time reasonably contemporaneous with the facts they relate, and in the usual course of their duties with' the Division.
>
> [Ibid. (fourth alteration in original) (quoting Cope, 106 N.J. Super. at 353).]

However,

> whether a Division report is offered under N.J.R.E. 803(c)(6), N.J.S.A. 9:6-8.46(a)(3), Rule 5:12-4(d), or Cope, statements in the report by persons other than Division staff personnel and affiliated professional consultants who are reporting their factual observations are inadmissible hearsay unless they qualify under another hearsay exception as required by N.J.R.E. 805.
>
> [N.T., 445 N.J. Super. at 497 (emphasis added).]

Rule 5:12-4(d) specifically states the Division "shall be permitted to submit into evidence, pursuant to N.J.R.E. 803(c)(6) and 801(d), reports by staff personnel or professional consultants." (Emphasis added). An affiliated consultant includes a professional to whom a Division client has been referred to by the Division for services. See Cope, 106 N.J. Super. at 344. "Conclusions drawn from the facts stated therein shall be treated as prima facie evidence, subject to rebuttal." R. 5:12-4(d).

Additionally, N.J.R.E. 803(c)(6) provides that a statement is admissible if it is in "writing or other record of acts, . . . made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the . . . record was made in the regular course of business and it was the regular practice of that business."

Here, as determined by Judge Grimbergen, the screening summary was admissible under Rule 5:12-4(d). As defendant acknowledges, the document is a business record of the Division admissible under the Rule. Contrary to defendant's contentions, however, the substance abuse counselor's statements within the document were also admissible because the counselor was acting in a capacity of a professional consultant to the Division, reporting to the Division information relating to defendant 's participation and treatment. The summary

is a business record under N.J.R.E. 803(c)(6), as the record of the phone call falls under the "other record of acts," the statements made and the recording of them by the Division were made in the ordinary course of business for a counselor, and the statements were made with firsthand knowledge of defendant's lack of substance abuse treatment.

For the same reasons, the other challenged documents, the rule out letter, the provider referral forms, the early intervention assessment for Austin, the letter from a provider, the provider vendor agreement, and emails between providers and the Division qualify under Rule 5:12-4(d).  The authors of those documents were also Division's consultants, made with firsthand knowledge of defendant's continued refusal to get assistance for her substance abuse, her parenting skills, and mental health issues.  Therefore, the documents were made in the ordinary course of business and meet the standards under N.J.R.E. 803(c)(6) and Rule 5:12-4(d).

Even if the records were improperly admitted, we conclude it would be harmless error.  See Rule 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result.").  The Division produced other substantial evidence supporting the judge's finding that defendant failed to get treatment for

her substance abuse and mental health issues, and the effects that had on her ability to parent her children. The most significant other evidence came from the psychologist's unrefuted expert testimony.

To the extent we have not specifically addressed any of defendant's remaining arguments we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3704-18T3