# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2469-23

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

T.B.,

     Defendant,

and

E.R.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.S.,
a minor.

_____

Submitted February 3, 2025 – Decided March 3, 2025

Before Judges Sabatino, Berdote Byrne, and Jablonski.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FG-03-0005-24.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Catherine Reid, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Renee Greenberg, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor (Meredith A. Pollock, Deputy Public Defender, of counsel; Todd Wilson, Designated Counsel, on the brief).

PER CURIAM

E.R. ("Ed")[1] appeals from a judgment terminating his parental rights to his son, J.S. ("Jay"). The judgment granted guardianship of Jay to the Division of Child Protection and Permanency followed by adoption by the current resource parent. We affirm the judgment because the trial court correctly applied the law and supported its legal conclusions with adequate, substantial and credible evidence.

---

[1] We use initials and pseudonyms to protect privacy interests and the confidentiality of the trial record. See R. 1:38-3(d)(12).

I.

We summarize the facts from the record and the evidence presented at the three-day guardianship trial conducted in February and March 2023.

Jay was born in April 2020 and tested positive for methadone in utero. After the hospital informed the Division, the Division began an investigation by interviewing Jay's biological mother, T.B. ("Tina")[2]. Tina admitted to previous substance abuse but stated that she was enrolled in a treatment program. The Division offered Tina family preservation services, permitted Jay to remain in her care, and closed its case after one year.

Tina's drug use persisted, however. In October 2021, the Division received a second referral alleging that Tina was smoking crack cocaine while caring for Jay. Tina initially denied the allegations, but later admitted to her relapse. Ultimately, Tina agreed to attend an intensive outpatient program. The Division left Jay in her care and closed the case in June 2022.

In August 2022, the Division received a referral that Tina was again smoking crack while caring for Jay. According to the allegation, Jay grabbed the cocaine and tried to put it in his mouth before another adult in the home

---

[2] Tina has not appealed the trial court's judgment terminating her parental rights.

A-2469-23

stopped him from ingesting it. Tina again denied the allegations, and then again admitted to a relapse. She explained that she was engaged in a methadone maintenance program and provided weekly urine screens. The caseworkers spoke with Tina's counselor at the treatment center and learned of her additional drug use, including a positive test for cocaine in June and four positive screens for fentanyl between June and September 2022. Tina admitted to the fentanyl abuse. As a result, the Division executed a Dodd removal[3] of Jay on September 15, 2022. Ed was unknown to the Division at this time.

In October 2022, the Division located Ed and confirmed his paternity of Jay. Although Ed expressed interest in obtaining custody of Jay early in the process, Ed's involvement proved inconsistent and lacked follow-through with the Division's recommendations and routine communication. He missed follow-up calls, family team meetings, and court appearances, and routinely attributed his absence and lack of participation to personal issues, employment demands, and marital conflicts. Ed's unstable housing situation in his home state of Pennsylvania also complicated his ability to unite with Jay. On many occasions, the Division explained that completing the Interstate Compact on

---

[3] A Dodd removal is an emergency removal of a child from a parent's custody without a court order according to N.J.S.A. 9:6-8.21 to 8.82, known as the Dodd Act. N.J. Div. of Youth and Fam. Servs. v. P.W.R. 205 N.J. 17, 26 n.11 (2011).

the Placement of Children (ICPC) was crucial for Ed to be considered as a caregiver. Despite this knowledge, Ed failed to complete the necessary documentation and background checks.

By early 2023, Ed's sparse participation in court proceedings, family planning meetings, and safety screenings continued to impact the Division's ability to place Jay in his care. This concern was substantiated by the conclusion made in a forensic psychological evaluation of Ed. The report highlighted that Ed had personality and behavioral issues including immaturity, self-centeredness, lack of empathy, and inconsistent behavior. Recognizing Ed's prognosis for significant and lasting change was limited and poor, the Division's expert ultimately concluded Ed could not be "supported as an independent caretaker to the minor child . . . at this time and within the foreseeable future." Nevertheless, the Division continued to offer supportive and rehabilitative interventions such as substance abuse evaluations and therapeutic parenting time. It also continued to facilitate the ICPC evaluation to be used to assess Ed's suitability as Jay's caregiver. However, Ed did not comply with those recommendations and his reluctance and failure to engage proactively in these processes became increasingly evident. His involvement with the Division demonstrated a pattern of unpredictability and potential

5

instability.

On March 28, 2024, the trial court issued an order after a comprehensive oral decision granting the Division's request to terminate Ed's and Tina's parental rights to Jay. After finding both the Division's caseworkers' and expert's testimony to be credible, and Ed's testimony not to be, the trial court concluded the Division satisfied the statutory best-interest test under N.J.S.A. 30:4C-15.1(a)(1)-(4) clearly and convincingly. This appeal followed.

## II.

We review a trial court's decision to terminate parental rights with deference to it if its factual findings are "grounded in substantial and credible evidence in the record." N.J. Div. of Child. Prot. & Permanency v. D.C.A., 256 N.J. 4, 19 (2023). "Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "We accord deference to the factfinding of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012). To that end, "a trial court's factual findings 'should not be disturbed

unless they are so wholly unsupportable as to result in a denial of justice.'" N.J. Div. of Youth & Fam. Servs. v. P.P., 180 N.J. 494, 511 (2004) (quoting In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)).  We do not defer to any legal conclusions, however.  N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 369 (2017).

"Parents have a constitutionally protected right to maintain a relationship with their children."  N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007).  That right, however, "is not absolute" and is limited "by the State's parens patriae responsibility to protect children whose vulnerable lives or psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent."  F.M., 211 N.J. at 447.  In guardianship and adoption cases, such as here, it is axiomatic that "[c]hildren have their own rights, including the right to a permanent, safe[,] and stable placement."  N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004).  We acknowledge "the need for permanency of placements by placing limits on the time for a birth parent to correct conditions in anticipation of reuniting with the child."  Ibid.  Thus, a parent's interest must, at times, yield to the State's obligation to protect children from harm.  See N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 145 (2018).

A-2469-23

To terminate a biological parent's rights to a child, the trial court must consider the statutory best-interest test that requires the Division to prove these elements:

> (1)  The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2)  The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;
>
> (3)  The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4)  Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

The Division must prove each prong by "clear and convincing evidence." N.J. Div. of Child Prot. & Permanency v. D.H., 469 N.J. Super. 107, 115 (App. Div. 2021).  These prongs are not separate nor distinct.  R.L.M., 236 N.J. at 145.  Rather, they overlap to generate a general inquiry as to whether termination of parental rights serves a child's best interests.  Ibid.  "The question ultimately is not whether a biological mother or father is a worthy

parent, but whether a child's interest will best be served by completely terminating the child's relationship with that parent." N.J. Div. of Youth & Fam. Servs. v. T.S., 417 N.J. Super. 228, 249 (App. Div. 2010) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 108 (2008)). "[P]arental fitness is the key to determining the best interests of the child." N.J. Div. of Youth & Fam. Servs. v. I.S., 202 N.J. 145, 170 (2010) (quoting In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999)).

A.

The Division, under prong one of N.J.S.A. 30:4C-15.1(a), must prove by clear and convincing evidence "the child's safety, health, or development has been or will continue to be endangered by the parental relationship." "[T]he Division must prove harm that 'threatens the child's health and will likely have continuing deleterious effects on the child.'" N.J. Dep't of Child. & Fams. v. A.L., 213 N.J. 1, 25 (2013) (quoting K.H.O., 161 N.J. at 352). "Although a particularly egregious single harm" can suffice, "the focus is on the effect of harms arising from the parent-child relationship over time on the child's health and development." K.H.O., 161 N.J. at 348.

Ed argues the Division presented no evidence that he physically, emotionally, nor psychologically harmed Jay. He also contends that his

uncertainty of Jay's paternity until he was contacted by the Division does not constitute neglect. The trial court rejected these arguments and concluded that Ed's testimony about his attempted involvement in Jay's life was not credible. The record supports the trial court's conclusions. Despite representations to the contrary, Ed indeed knew about Jay's birth, was aware of Tina's ongoing drug use, and had frequent contact with Jay. Despite this knowledge, Ed nevertheless failed to assume any parental duties, contributing to the harm Jay experienced in his mother's care. A parent's failure to provide nurture and care of a child over an "extended period of time is in itself a harm that endangers the health and development of the child." In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999) (citing K.H.O., 161 N.J. at 352-54).

Similarly, as the trial court found, the Division's expert concluded that Ed was "immature, egocentric, self-centered, and harboring anger and resentment." The Division's expert opined it was "unlikely", therefore, that Ed "would be able to be a minimally adequate parent" to Jay. Further, according to the Division's expert, if Jay were placed with Ed, Ed's "inability to provide a minimal level of proper parenting" would expose Jay to "risks of harm."

Finally, the trial court correctly acknowledged Ed's documented history of domestic violence and potential substance abuse combined with the lack of

10

any rehabilitative efforts. His lack of rehabilitative attention to these important circumstances similarly supports the trial court's conclusion that the Division proved prong one clearly and convincingly. N.J. Div. of Youth & Fam. Servs. v H.R., 431 N.J. Super. 212, 223 (App. Div. 2013) (holding that "[w]hen the condition or behavior of a parent causes a risk of harm . . . and the parent is unwilling or incapable of obtaining appropriate treatment for that condition, the first subpart" of the best-interests test has been proven). We discern no reason to disturb the trial court's well-reasoned findings under prong one.

B.

Prong two also relates to parental unfitness. K.H.O., 161 N.J. at 352. The inquiry "centers on whether the parent is able to remove the danger facing the child." F.M., 211 N.J. at 451 (citing K.H.O., 161 N.J. at 352). This prong "may be met by indications of parental dereliction and irresponsibility, such as the parent's continued or recurrent drug use, the inability to provide a stable and protective home, [and] the withholding of parental attention and care." K.H.O., 161 N.J. at 353. "The determinative issue is whether the circumstances surrounding the parental relationship . . . cause harm to the child." M.M., 189 N.J. at 289.

11

Ed contends his lack of completion of the ICPC process is not proof that he is unable to parent Jay. He asserts that his perceived "instability" was not established clearly and convincingly because he maintained multiple jobs and consistently lived in the same home. However, as the trial court found and as the record reveals, Ed's failure to complete the ICPC evaluation, while knowing Jay was in resource care, and his failure to engage in any parenting time with Jay aptly demonstrates his failure to supply the Division with an adequate parenting plan and demonstrates neglect according to the statute. Furthermore, Ed did not propose any reliable timeline to achieve his stability. See C.S., 367 N.J. Super. at 111. (acknowledging "the need for permanency of placements by placing limits on the time for a birth parent to correct conditions in anticipation of reuniting with the child.")

We discern no error in the trial court's thorough findings that the Division proved prong two by clear and convincing evidence.

## C.

Prong three requires the Division to make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home" and also to consider "alternatives to termination of parental rights." N.J.S.A. 30:4C-15.1(a)(3). Reasonable efforts are fact-

specific. N.J. Div. of Youth and Fam. Servs. v. R.G., 217 N.J. 527, 557 (2014). Generally, the Division must "provide services to the family according to a case plan, including enlisting the assistance of relatives, providing direct services, or providing referrals to community services providers." D.M.H., 161 N.J. at 387. The Division also "must monitor the services, change them as needs arise, and identify and strive to overcome barriers to service provision or service utilization." R.G., 217 N.J. at 557 (quoting D.M.H., 161 N.J. at 387). The Division should, among other things, "encourage, foster[,] and maintain" the parent-child bond, "promote and assist in visitation," and inform parents of "appropriate measures [they] should pursue . . . to . . . strengthen" the relationship with their child. Ibid. (quoting D.M.H., 161 N.J. at 390).

Ed argues that the trial court improperly analyzed the Division's efforts to both parents jointly, rather than on the reunification efforts provided directly to him. He claims the Division impermissibly erected barriers to reunification when it required participation with the ICPC and the Division failed to provide services for concerns that the Division itself had highlighted. However, as the trial court found, and as the record substantiates, the opposite is true.

The Division consistently invited Ed to planning meetings for Jay, worked diligently to maintain contact with him by telephone calls, emails, and text messages, and supported efforts to have him complete the ICPC process, twice. Ed thwarted his own efforts to unify with Jay when he failed to accept the parenting time opportunities that the Division provided.

Substantial credible evidence in the record clearly and convincingly supports the trial court's finding that the Division provided reasonable efforts to place Jay with Ed.

D.

Prong four requires the court to determine that the "[t]ermination of parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). This prong does not require a showing that no harm will come to the child "as a result of the severing of biological ties." K.H.O., 161 N.J. at 355. Instead, the issue is "whether a child's interest will best be served by completely terminating the child's relationship with that parent." E.P., 196 N.J. at 108.

The gravamen of the Division's case against Ed was that he was both unwilling and unable to parent Jay. The trial court properly considered the uncontroverted expert testimony of the Division's expert that Ed was unfit to

A-2469-23

minimally parent Jay presently nor within the foreseeable future. This evidence is sufficient to establish prong four.

Finally, we reject Ed's argument that the trial court's findings were improperly tainted by the introduction in evidence of various inadmissible hearsay documents offered by the Division. Rule 5:12-4(d) permits the Division to submit into evidence "reports by staff personnel or professional consultants," but it must do so "pursuant to N.J.R.E. 803(c)(6) and 801(d)," which refer to the business record hearsay exception. Nonetheless, reports admitted pursuant to Rule 5:12-4(d) are still subject to other hearsay limitations, including those imposed by N.J.R.E. 805 concerning embedded hearsay statements, and N.J.R.E. 808, concerning expert opinion included in a hearsay statement admissible under an exception. See, e.g., In re Guardianship of Cope, 106 N.J. Super. 336, 343 (App. Div. 1969) (holding "the [Division] should be permitted to submit into evidence, pursuant to [former] Evidence Rules 63(13) and 62(5), reports by [Division] staff personnel (or affiliated medical, psychiatric, or psychological consultants), prepared from their own first-hand knowledge of the case"). Applying these principles, we discern no error in the court's admission of the various reports and documents.

Ed's other arguments that we have not specifically addressed are without sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(1)(e).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

16