# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5303-17T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

    Plaintiff-Respondent,

v.

Q.V.P.,

    Defendant-Appellant,

and

W.W., A.M., and T.C.,

    Defendants.

_____

IN THE MATTER OF K.P., WI.W.
and I.C.,

    Minors.

_____

Submitted May 22, 2019 – Decided August 2, 2019

Before Judges Vernoia and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FN-16-0137-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Carol L. Widemon, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason Wade Rockwell, Assistant Attorney General, of counsel; Kathryn A. Kolodziej, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Nancy P. Fratz, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Following the entry of the trial court's final fact-finding order that she abused or neglected her children, K.P. (Karen) and Wi.W. (Winston), Q.V.P. (Qianna)[1] appeals contending the court erred in relying on inadmissible evidence to deny her motion for dismissal – ostensibly made at the close of the State's case pursuant to Rule 4:37-2(b) – of the New Jersey Division of Child Protection

---

[1] We derive the pseudonyms from those set forth in Qianna's merits brief to protect the privacy of the children and preserve the confidentiality of these proceedings.  No disrespect is intended.

A-5303-17T4

and Permanency's (Division) Title Nine claims after the Division presented its evidence at the fact-finding hearing. She argues:

I. REVERSAL OF THE TITLE NINE JUDGMENT AGAINST QIANNA IS MANDATED BECAUSE THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING INTO EVIDENCE AT THE FACT-FINDING HEARING DOCUMENTS THAT DID NOT MEET THE REQUIREMENTS OF N.J.R.E. (803)(C)(6), THE BUSINESS RECORDS EXCEPTION TO THE HEARSAY RULE, AND N.J.R.E. 808, GOVERNING THE ADMISSIBILITY OF EXPERT OPINIONS INCLUDED IN ADMISSIBLE HEARSAY STATEMENTS, AND RELIED UPON THOSE DOCUMENTS IN DENYING THE MOTION FOR DISMISSAL OF THE STATE'S TITLE NINE CLAIMS AGAINST QIANNA, A RESULT THAT THE COURT MAY NOT OTHERWISE HAVE REACHED ABSENT ITS RELIANCE ON THOSE DOCUMENTS.

A. Reversal of the trial court's denial of Qianna's counsel's motion to dismiss all Title Nine claims against Qianna is mandated because the trial court committed reversible error in admitting inadmissible hearsay documents into evidence and the court's reliance on those documents led it to deny the motion to dismiss, a result it may otherwise not have reached.

B. The trial court's denial of Qianna's counsel's motion for dismissal must be reversed because it committed reversible error in admitting into evidence the complex diagnoses and opinions contained in the diagnostic impression form in the absence of expert testimony, in contravention of the requirements of N.J.R.E. 808.

A-5303-17T4

II. BECAUSE AT THE TIME THE STATE RESTED ITS CASE, IT HAD NOT PROVEN A NEXUS BETWEEN ANY DRUG USE BY QIANNA AND ACTUAL HARM OR AN IMMINENT DANGER OF HARM TO THE CHILDREN, THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DEFENSE COUNSEL'S MOTION FOR DISMISSAL OF THE STATE'S TITLE NINE CLAIMS AGAINST HER AND THIS COURT SHOULD REVERSE THE JUDGMENT AGAINST HER UNDER N.J.S.A. 9:6-8.21(c)(4)(b) AND REMAND THE MATTER FOR ENTRY OF AN ORDER DISMISSING ALL TITLE NINE CLAIMS AGAINST HER.

III. THIS MATTER SHOULD BE REVERSED AND REMANDED, BECAUSE, EVEN IF NONE OF THE ERRORS COMMITTED BY THE TRIAL COURT WOULD SINGULARLY CONSTITUTE REVERSIBLE ERROR, THE ACCUMULATION OF ERRORS CONSTITUTES PLAIN ERROR CLEARLY CAPABLE OF CAUSING AN UNJUST RESULT.

Based on our review of the record in light of the applicable law, we affirm in part and reverse in part.

The Division's only witness was a caseworker through whom the Division introduced eight documentary exhibits that were admitted into evidence: a December 27, 2016 Division screening summary of a referral concerning Qianna's use of PCP (P-1); an investigation summary assigned December 27, 2016 (P-2); two February 14, 2017 screening summaries of a referral alleging Qianna tested positive for PCP while staying in a shelter (P-7) and one reporting

she and Winston were going to be removed from the shelter because she tested positive for PCP (P-8); an investigation summary assigned on February 14, 2017 (P-9); two BioReference Laboratories reports of Qianna's urinalyses conducted on December 30, 2016 (P-3) and January 26, 2017 (P-6) which were positive for PCP; and a Diagnostic Impression/Recommendation Form (Form) from Preferred Children's Services (PCS) completed after Qianna was evaluated on December 28, 2016 pursuant to the Division's referral to PCS's Child Protection Substance Abuse Initiative (P-4). The trial court denied Qianna's motion to dismiss, concluding the Division established that "if the mother is taking PCP while she has care, custody of her child, then the child is abused or neglected as there is a substantial likelihood that the child could be injured and there's a risk of harm."

Qianna contends the court erred by relying on: both lab reports and the Form because the Division did not qualify them as business records pursuant to Rule 803(c)(6), N.J.R.E. 803(c)(6); the complex diagnoses and opinions in the Form which were not offered through an expert produced at the hearing or otherwise admissible under Rule 808, N.J.R.E. 808. She also argues that the Division did not prove a nexus between her alleged PCP use and any imminent danger of harm to the children.

A-5303-17T4

In its determination of a motion for dismissal at the close of the evidence – whether it be a motion for directed verdict at the close of trial, R. 4:40-1, or a motion for involuntary dismissal under Rule 4:37-2(b) – the trial court "must accept as true all evidence presented . . . and the legitimate inferences drawn therefrom, to determine whether the proofs are sufficient to sustain a judgment." Prioleau v. Ky. Fried Chicken, Inc., 434 N.J. Super. 558, 569 (App. Div. 2014), aff'd as modified, 223 N.J. 245, 258 (2015). The "court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Ibid. (quoting Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969)).

"Under Rule 4:37-2(b), a motion for a directed verdict is granted only if, accepting the plaintiff's facts and considering the applicable law, 'no rational [fact-finder] could draw from the evidence presented' that the plaintiff is entitled to relief." Ibid. (quoting Pitts v. Newark Bd. of Educ., 337 N.J. Super. 331, 340 (App. Div. 2001)). If reasonable minds could reach different conclusions, the motion must be denied. Id. at 570. We apply the same standard that governed the trial court when reviewing an order granting or denying a motion for a directed verdict. Frugis v. Bracigliano, 177 N.J. 250, 269 (2003). Under this standard, we need not parse all of Qianna's evidentiary arguments because there

was sufficient evidence in the record which, together with the reasonable inferences drawn therefrom, supports denial of her motion to dismiss the Division's claims regarding Winston.

The Division caseworker testified that the investigation summary (P-2) resulted from the December 27, 2016 referral, that it was part of the Division's regular business practice to document the results of an investigation in a summary and that the summary – approved on February 24, 2017 – was made at the time of or shortly after the investigation. The summary reported events through February 14 and 15, 2017, the dates on which Winston and Karen were, respectively, removed by the Division from Qianna's care. Similarly, the caseworker testified she, as part of the Division's regular business practice, completed the investigation summary (P-9) after the investigation – assigned on February 14, 2017. On March 6, 2017, the caseworker approved the investigation summary which reported events through February 16, 2017.

The caseworker's testimony established that both investigation summaries were admissible under N.J.S.A. 9:6-8.46(a) and Rule 5:12-4(d). The statute, in pertinent part, provides:

> In any hearing under this act, . . . (1) proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of, or the responsibility of, the parent or guardian and . . .

7

(3) any writing, record or photograph, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any condition, act, transaction, occurrence or event relating to a child in an abuse or neglect proceeding of any hospital or any other public or private institution or agency shall be admissible in evidence in proof of that condition, act, transaction, occurrence or event, if the judge finds that it was made in the regular course of the business of any hospital or any other public or private institution or agency, and that it was in the regular course of such business to make it, at the time of the condition, act, transaction, occurrence or event, or within a reasonable time thereafter, shall be prima facie evidence of the facts contained in such certification. . . . All other circumstances of the making of the memorandum, record or photograph, including lack of personal knowledge of the making, may be proved to affect its weight, but they shall not affect its admissibility . . . .

[N.J.S.A. 9:6-8.46(a).]

Rule 5:12-4(d) permits the Division "to submit into evidence, pursuant to N.J.R.E. 803(c)(6) and 801(d), reports by staff personnel or professional consultants." As we recognized in In re Guardianship of Cope, because an evidentiary requirement that "all [Division] personnel having contact with a particular case to give live testimony on all the matters within their personal knowledge would cause an intolerable disruption in the operation of the" Division, 106 N.J. Super. 336, 343 (App. Div. 1969), it should be allowed to submit "reports by [Division] staff personnel (or affiliated medical, psychiatric,

or psychological consultants), prepared from their own first-hand knowledge of the case, at a time reasonably contemporaneous with the facts they relate, and in the usual course of their duties with the [Division]," ibid. "Reports of this type, prepared by the qualified personnel of a state agency charged with the responsibility for overseeing the welfare of children in the State, supply a reasonably high degree of reliability as to the accuracy of the facts contained therein." Id. at 344.

The caseworker testified that the Division regularly documented its investigations in investigation summaries. As our Supreme Court noted in New Jersey Division of Youth and Family Services v. M.C. III, 201 N.J. 328, 347 (2010), "[Rule] 803(c)(6) is the business-records exception to the hearsay rule and 801(d) defines the word business to 'include[ ] every kind of business, institution, association, profession, occupation and calling, whether or not conducted for profit, and also includes activities of governmental agencies.'" (alteration in original) (quoting N.J.R.E. 801(d)). The Division is therefore a "business" and the testimony established it was the Division's regular practice to make the summaries, N.J.R.E. 803(c)(6); and that they were "made in the regular course of business" and were "prepared within a short time of the act, condition or event being described," M.C. III, 201 N.J. at 347 (quoting State v.

Matulewicz, 101 N.J. 27, 29 (1985)). We also discern that, contrary to Qianna's objection that the reports did not contain first-hand information, a review of the wording of the reports reveals the pertinent sections were written in the first-person by "this worker."

The properly admitted summaries contained Qianna's admissions – independently admissible under Rule 803(b)(1);[2] see N.J.R.E. 805; Konop v. Rosen, 425 N.J. Super. 391, 402 (App. Div. 2012) (explaining that each hearsay-within-hearsay statement may be admitted so long as the basis for admission is separately considered as to each) – that established her abuse or neglect of Winston. As documented in exhibit P-2, when the Division worker responded to the December 27, 2016 referral and addressed Qianna about the allegations of PCP use, Qianna told the worker that she initially thought Options Counseling Center had called the Division because she had "recently provided a urine screen to [the] Center and tested positive." Although she denied any current use of PCP, she "reported she last smoked '[two] months ago.'" The report also documents that Qianna and Winston were discharged that night by the shelter because the positive drug test contravened the shelter's rules, necessitating the

---

[2] Rule 803(b)(1) provides that "[a] statement offered against a party which is . . . the party's own statement" is not excluded by the hearsay rule. N.J.R.E. 803(b)(1).

A-5303-17T4

Division's intervention to locate and transport Qianna and Winston to a motel. On the way to the motel, Qianna agreed to report to the Division office the next day for a substance abuse assessment. At the office, Qianna told the worker she had never before been in substance abuse treatment and "admitted that she had been using PCP for 'years[]'" but "did not answer how often she was using the substance."

The subsequent investigation summary (P-9) evinced that the Division received notice on February 14, 2017 that Qianna and Winston, who had been relocated to a shelter facility at Eva's Family Shelter, were being removed because Qianna tested positive for PCP. When workers responded to the shelter facility and informed Qianna they were there to conduct an emergency removal of Winston, Qianna "immediately became upset and informed [the] workers that she informed staff when she came to the facility . . . that she would test positive." In an effort to forestall Winston's removal, Qianna explained "that she was going to begin a substance abuse program later in the week and that she wasn't giving her son to anyone."

Title Nine, N.J.S.A. 9:6-8.21 to -8.73, which governs Division-initiated actions alleging abuse or neglect of children, see N.J. Div. of Youth & Family

Servs. v. L.A., 357 N.J. Super. 155, 163 (App. Div. 2003), defines an "abused or neglected child," in relevant part, as

> a child less than 18 years of age . . . whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court.
>
> [N.J.S.A. 9:6-8.21(c)(4)(b); see also N.J.S.A. 9:6-8.9(d)(2) (defining "abused child" under Title Nine).]

"If there is no evidence of actual harm . . . the statute requires a showing of 'imminent danger' or a 'substantial risk' of harm before a parent or guardian can be found to have abused or neglected a child." N.J. Dep't of Children & Families, Div. of Youth and Family Servs. v. A.L., 213 N.J. 1, 8 (2013) (quoting N.J.S.A. 9:6-8.21(c)). Importantly, "[c]ourts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999).

The investigation summaries evidence that then four-year-old Winston, born April 12, 2012, while in Qianna's custody and care, twice lost shelter-housing during the winter of 2016-2017 as a result of Qianna's admitted PCP

use, making him abused or neglected. Qianna's arguments based on inapposite cases, including New Jersey Division of Youth and Family Services v. V.T., 423 N.J. Super. 320 (App. Div. 2011) and A.L., 213 N.J. 1, are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E). There was an obvious nexus between Qianna's drug use and the substantial risk of harm resulting from her failures to abide by the rules of the shelters that housed her and her son. Without reliance on the contested lab reports and the Form, these proofs are sufficient to overcome Qianna's motion to dismiss the Division's claims regarding Winston.[3]

We cannot reach the same conclusion regarding the Division's proofs supporting the alleged abuse or neglect of then fifteen-year old Karen, born December 30, 2001, who did not reside with Qianna. In December 2016, Qianna

---

[3] Our ruling does not imply that the other documents were inadmissible; only that the investigation summaries provided sufficient evidence to deny the motion to dismiss. See M.C. III, 210 N.J. at 347, 348 (recognizing "the Division's need to secure the services of a range of professionals when investigating a claim of child abuse," and that the reports of "professional consultants" were not inconsistent with the purpose of Rule 5:12-4(d)); see also N.J. Div. of Child Prot. & Permanency v. R.W., 438 N.J. Super. 462, 468 (App. Div. 2014) (holding "[u]nquestionably, Rule 5:12-4(d) makes Division documents admissible when they contain 'reports by staff personnel or professional consultants.' But trial judges must nonetheless fully assess the evidential issues inherent in the Division's submission of documents which include statements by others than Division workers or experts." (quoting R. 5:12-4(d))).

told the Division worker, as documented in exhibit P-2, that Karen was "under her custody [but] live[d] with her paternal aunt and grandmother." The later investigation summary (P-9) recorded that Karen told the Division worker on February 15, 2017 that she spoke with Qianna "on the phone almost daily" and saw her mother "usually after school"; her last in-person visit was the day prior. None of the parties, however, have pointed to any evidence presented in the Division's case-in-chief that tethered Qianna's drug use to any substantial risk of harm to Karen. Indeed, the trial court, in finding that Qianna abused or neglected Karen, relied on Qianna's own testimony – made after her motion to dismiss – during the fact-finding hearing to provide that link. The trial court therefore erred in denying Qianna's motion to dismiss the abuse or neglect claims pertaining to Karen. Frugis, 177 N.J. at 269.

We are constrained to reverse and remand this case for entry of a revised fact-finding order, vacating the finding of abuse or neglect as to Karen. We affirm the trial court's finding of abuse or neglect as to Winston.

Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION